**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EDWARD SOJDA,

                                   Plaintiff,                          5:16-cv-00938 (BKS/ATB)

v.

BABBITT BEARINGS, INC.,

                                   Defendant.

**APPEARANCES:**

*For Plaintiff:*
James D. Hartt, Esq.
70 Linden Oaks, 3rd Floor
Rochester, NY 14625

*For Defendant:*
Miles G. Lawlor, Esq.
Ferrara Fiorenza PC
5010 Campuswood Drive
East Syracuse, NY 13057

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Edward Sojda brought this action against his former employer, Defendant

Babbitt Bearings, Inc., asserting a single claim for disability discrimination under the Americans

with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101–12213. (Dkt. No. 1). Currently pending

before the Court is Defendant's motion for summary judgment under Rule 56 of the Federal

Rules of Civil Procedure. (Dkt. No. 19). Plaintiff opposes the motion. (Dkt. No. 23). For the

reasons that follow, Defendant's motion for summary judgment is granted.

## II.    BACKGROUND

### A.    Record Before the Court

As part of its motion for summary judgment, Defendant filed a statement of material facts

(the "SMF"). (Dkt. No. 19-2). In response, Plaintiff filed what Defendant refers to as a "hybrid

document," (Dkt. No. 24, at 4), comprising Plaintiff's response to Defendant's SMF, a separate

statement of facts, and Plaintiff's memorandum of law in opposition to summary judgment. (*See*

Dkt. No. 23). Defendant contends that Plaintiff's submission does not conform to Local Rule

7.3(a)(3)[1] because Plaintiff's response to the SMF only cites to "Exhibit 2" for support, but

"Exhibit 2" is a one-line affidavit by Plaintiff stating that "Plaintiff affirms paragraph #1 of

Defendant's Statement of Material Facts." (*See* Dkt. No. 24, at 4–5; Dkt. No. 23; Dkt. No. 23-2).

Although Plaintiff's affidavit appends a list of "Answers to Affidavit," which, like the SMF, is

numbered 1 through 66, Defendant argues that this unsigned list "does not constitute record

evidence of anything." (Dkt. No. 24, at 5).

While Plaintiff's response to the SMF does not contain the matching numbered

paragraphs required by the Local Rules, it refers specifically to each paragraph in the SMF and

therefore effectively responds to each of Defendant's assertions. As to Plaintiff's affidavit, the

Court, in the exercise of its discretion, will construe the list of "Answers to Affidavit" as

incorporated into Plaintiff's affidavit for purposes of determining the summary judgment motion.

---

[1] The rule provides as follows:

> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

L.R. 7.3(a)(3).

*See Kravtsov v. Town of Greenburgh*, No. 10-cv-3142, 2012 WL 2719663, at \*1 n.1, 2012 U.S.

Dist. LEXIS 94819, at \*2 n.1 (S.D.N.Y. July 9, 2012) (similarly excusing the parties' failure to

comply with individual rules concerning statements of material facts and responses thereto "in

the interest of deciding the matter on the merits"). Accordingly, the Court will consider both the

SMF, to the extent it is properly supported by the record, and Plaintiff's response, to the extent it

is properly supported by the "Answers to Affidavit," in determining which material facts are

disputed. *See* L.R. 7.1(a)(3). Further, the Court "shall deem admitted any properly supported

facts set forth in the Statement of Materials Facts that the opposing party does not specifically

controvert." *Id.*; *see also Riehl v. Martin*, No. 13-cv-439, 2014 WL 1289601, at \*5, 2013 U.S.

Dist. LEXIS 186610, at \*12, (N.D.N.Y. Dec. 19, 2013) ("Where, as here, a party has failed to

respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R.

7.1(a)(3), the facts in the movant's statement will be accepted as true . . . to the extent they are

supported by evidence in the record . . . ."), *report-recommendation adopted by* 2014 WL

1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014).

Defendant raises one last procedural issue concerning Plaintiff's submission. Noting that

Plaintiff cites to his "Exhibit 8"—the New York State Division of Human Rights' (the

"NYSDHR") September 24, 2015 "Determination After Investigation" (commonly known as a

probable cause determination)—in support of his separate statement of facts, (*see* Dkt. No. 23, at

6–9), Defendant argues that Plaintiff cannot rely on the probable cause determination as record

evidence of discrimination, as the NYSDHR "did not make any findings of fact or conclusion of

law." (Dkt. No. 24, at 5–6). The Court agrees. The probable cause determination indicated that

the next step in the NYSDHR proceeding would be fact-finding. (*See* Dkt. No. 1-2, at 5–6

("[T]here are issues of material fact remaining . . . [which] are best resolved in the context of a

full public hearing, where there is sworn testimony and the opportunity for cross-

examination.")). Upon Plaintiff's request, the NYSDHR dismissed his case for administrative

convenience to allow Plaintiff to pursue his claim in federal court. (*See* Dkt. No. 23-11, at 2–5).

*See* N.Y. Exec. Law § 297(9) ("[W]here the [NYSDHR] has dismissed such complaint on the

grounds of administrative convenience, . . . such person shall maintain all rights to bring suit as if

no complaint had been filed with the [NYSDHR]."). The Court notes that Plaintiff has not cited

the probable cause determination to establish the underlying material facts that must be

determined in this action, (*see* Dkt. No. 23, at 6–9), and the Court has not considered it for that

purpose.

### B.    Facts[2]

#### 1.    Plaintiff's Employment

Between August 2006 and January 7, 2015, Plaintiff served as an employee—first as a

machinist and later as a utility worker—of Defendant, a New York–based, family-owned, and

family-operated manufacturer of engineered bearings, seals, and assorted split parts destined

primarily for the high-speed-rotating-equipment market. (Dkt. No. 19-2, ¶¶ 1, 2). His regular

hours were from 6:30 a.m. to 3:00 p.m. (*Id.* ¶ 2). While employed, Plaintiff was a member of a

collective bargaining unit represented by a union that was party to a collective bargaining

agreement (the "CBA") with Defendant. (*Id.* ¶ 3). The CBA prohibited discrimination against

employees on various grounds, including disability.[3] (Dkt. No. 19-2, ¶ 4; CBA § 9, Dkt. No. 19-

---

[2] Unless otherwise indicated, the facts have been drawn, to the extent they are supported in the record, from Defendant's SMF (Dkt. No. 19-2) and Plaintiff's response thereto (Dkt. No. 23). All evidence is considered in the light most favorable to Plaintiff.

[3] Defendant asserts that neither Plaintiff nor the union "ever filed a grievance alleging discrimination in violation of Section 9" of the CBA. (Dkt. No. 19-2, ¶ 6). Plaintiff denies this, stating that he "filed grievance for treatment with drinking problem," (Dkt. No. 23-2, at 3), without specifying any date or citing any supporting evidence. Plaintiff does not specifically address whether that grievance alleged discrimination in violation of section 9 of the CBA and has not argued that it is relevant here. Thus, even if it is disputed, that fact is not material.

3, at 13). It also established an attendance policy under which cumulative lateness or absences during a rolling 12-month period could result in disciplinary actions, including written warnings, suspension without pay, and discharge for 12 or more unauthorized absences.[4] (Dkt. No. 19-2, ¶¶ 7–8, CBA § 11.9, Dkt. No. 19-3, at 16). According to Defendant, while the "particular circumstances behind an employee's absence may be considered for purposes of Attendance Policy enforcement, . . . the fact that an employee has a doctor's note for an absence generally does not render the absence 'excused" or 'approved.'" (Dkt. No. 19-2, ¶ 9). Plaintiff denies this, asserting instead that a doctor's "excuse was always excused." (Dkt. No. 23-2, at 3).

Defendant issued Plaintiff seven written warnings, known as "Employee Warning Records" ("EWRs"), between April 2011 and April 2014 because of his poor attendance, and suspended him twice in April 2011 and August 2013 because of attendance issues.[5] (Dkt. No. 19-2, ¶¶ 10–11). Defendant also granted Plaintiff Family Medical and Leave Act ("FMLA") leave on several occasions, most recently in June 2014. (*Id.* ¶ 12). Consistently with company practice, Defendant did not count Plaintiff's FMLA-covered absences for purposes of tallying the number of unauthorized absences. (*Id.* ¶ 13). In August 2012, Plaintiff received an EWR when, following co-worker reports that he smelled of alcohol, he refused to submit to an alcohol screening and left work instead. (*Id.* ¶ 15). In August 2013, Defendant terminated Plaintiff for violating the CBA after he tested positive for alcohol in an on-duty alcohol screening.[6] (*Id.* ¶ 16; CBA § 17.5, Dkt. No. 19-3, at 21). After the union grieved his termination, Defendant agreed to

---

[4] Plaintiff denied the assertions in paragraphs 8 and 9 of the SMF with the following response: "doctors excuse was always excused. Being sick is beyond a persons [sic] own control." (Dkt. No. 23-2, at 3). That response is nonresponsive to Defendant's accurate description of section 11.9 of the CBA. Accordingly, Plaintiff's denial is ineffectual.

[5] Defendant also points out that, during his employment, Plaintiff was also disciplined for reasons unrelated to attendance. (Dkt. No. 19-2, ¶ 14).

[6] In his deposition, Plaintiff testified that he had "some serious drinking problems" at the time. (Dkt. No. 19-1, at 101; *see also* Dkt. No. 19-2, ¶ 17).

place Plaintiff on disciplinary suspension, without pay, while he underwent treatment in an

alcohol abuse program. (Dkt. No. 19-2, ¶ 18). He returned to work in April 2014, but his

continued employment was subject to a "final" warning. (*Id.* ¶ 19). From August 20, 2014 to

December 5, 2014, Plaintiff nevertheless accumulated seven unauthorized absences. (*Id.* ¶ 20).

### 2.    Plaintiff's Sick Days Out of the Office

On the morning of Monday, December 15, 2014, Plaintiff called in to work, spoke to

Human Resources Director Janet Walters, and advised her that he had the flu and would not be

reporting to work that day. (Dkt. No. 19-2, ¶ 21). On the following day, Tuesday, December 16,

2014, Plaintiff called in to work and told President Michelle Capozza that he was ill and would

not be coming in to work. (Dkt. No. 19-2, ¶ 22). Plaintiff asserts that he told Ms. Capozza that he

was vomiting. (Dkt. No. 23-2, at 3). On Wednesday, December 17, 2014, Plaintiff called in again

and spoke to Ms. Capozza, advising that he was ill and would not come in, and indicating that he

would go to urgent care later in the day. (Dkt. No. 19-2, ¶ 23). Plaintiff asserts he told her that he

thought he had the flu. (Dkt. No. 23-2, at 3). On Thursday, December 18, 2014, Plaintiff called

Defendant's offices and told employee Jim Varney that he was ill and would not come in that

day; he did not provide Mr. Varney with any additional information concerning his condition.

(Dkt. No. 19-2, ¶ 25). Plaintiff spoke to Mr. Varney again the next day, on Friday, December 19,

2014, and said he still felt sick and would not come in to work; during that call, Plaintiff

described one of the physical symptoms he was experiencing. (*Id.* ¶ 26). Plaintiff states that he

told Mr. Varney that he had the flu, (Dkt. No. 23-2, at 3).

During the week that he called in sick, Plaintiff visited Five Star Urgent Care ("Five

Star") in Syracuse. (Dkt. No. 19-2, ¶ 28). There, a doctor took his blood pressure, listened to his

stomach with a stethoscope, and determined that there was "something definitely going on." (*Id.*

¶ 29). The doctor prescribed an "anti-nauseous" medication and "a strong Imodium." (*Id.* ¶ 30).

6

Plaintiff testified that at some point he told someone (he could not recall whom) that he had "gastrointestinitis"—a "fancy name" for the "stomach flu." (*Id.* ¶¶ 31, 32; *see also* Dkt. No. 19-1, at 126, 185, 197). Plaintiff testified that he was given a doctor's note releasing him to return to work on December 19, 2014.[7] (Dkt. No. 19-2, ¶ 33; Dkt. No. 19-1, at 127, 130). While Plaintiff did not provide a copy of the doctor's note to Defendant or his union, he testified that he showed the note to Jeff Rossman, "one of the bosses." (Dkt. No. 19-1, at 64, 139–40, 143–44, 154, 158–59).

Plaintiff returned to work on Monday, December 22, 2014, and also worked the following day, Tuesday, December 23, 2014. (Dkt. No. 19-2, ¶ 35). He did not talk to Ms. Walters upon his return. (*Id.* ¶ 36). Defendant's facility was closed for the holidays starting on Wednesday, December 24, 2014, and reopened on Monday, January 5, 2015. (*Id.* ¶ 37). Plaintiff was off during that time. (*Id.* ¶ 38). On Monday, January 5, 2015, Plaintiff called in to work to report that he was taking a personal day. (*Id.*).

### 3.    Plaintiff's Termination

Defendant calculated that Plaintiff had 12 unauthorized absences as of December 19, 2014. Based on that fact, and under the aforementioned attendance policy, Defendant decided to terminate Plaintiff's employment. (*Id.* ¶ 39). Both parties agree that Plaintiff's termination was not related to his history of alcoholism, methicillin-resistant staphylococcus aureus ("MRSA"), high-blood pressure, or diabetes.[8] (*Id.* ¶ 40). Ms. Walters met with Plaintiff and his union

---

[7] Neither party has indicated whether Plaintiff's Exhibit 10, labeled "Doctor's Note" (Dkt. No. 23-10), is the doctor's note referenced in Plaintiff's deposition and paragraph 33 of the SMF.

[8] Although Plaintiff's separate statement of facts "alleges" that "the stigma related, in particular, to the alcoholism disability he suffered through, contributed as a cause of Defendant's termination of Plaintiff from his employment in January of 2015," that assertion is not supported by the record materials that he cites. (*See* Dkt. No. 23, at 7 (citing the January 7, 2015 termination letter and the January 12, 2015 grievance denial)). Indeed, Plaintiff testified that he was "fired because [he] had gastrointestinitis," and that his termination was not because of alcoholism, MRSA, diabetes, or high-blood pressure. (Dkt. No. 19-1, at 178–181).

representatives on January 7, 2015, notified them that Plaintiff was terminated effective that day, and presented Plaintiff with four EWRs documenting his attendance policy violations. (*Id.* ¶¶ 41, 42). Plaintiff did not respond in writing to the disciplinary notice, and declined to execute a written acknowledgment of his receipt of the EWRs.[9] (*Id.* ¶ 43). Plaintiff did not provide a copy of the doctor's note at the January 7, 2015 meeting. (Dkt. No. 19-2, ¶ 44). Plaintiff asserts that he told those in attendance that he had a doctor's note at home. (Dkt. No. 23-2, at 3). Plaintiff did not mention gastroenteritis, (Dkt. No. 19-2, ¶ 46), but according to Plaintiff, "[he] said [he] had the flu," (Dkt. No. 23-2, at 3). The issues of disability and accommodation for a disability did not come up during the meeting. (Dkt. No. 19-2, ¶ 47).

Plaintiff's union filed a grievance alleging that Plaintiff's termination violated the CBA's attendance policy; the grievance did not allege, however, that the termination violated the CBA's nondiscrimination provision. (*Id.* ¶¶ 48, 49). In accordance with the CBA's grievance procedure, a "Step 3" grievance meeting was held on January 9, 2015.[10] (*Id.* ¶ 50). Plaintiff did not provide a copy of the doctor's note at the grievance meeting.[11] (*Id.* ¶ 51; Dkt. No. 19-1, at 158–59). Plaintiff did not claim at the grievance meeting that he suffered a disability in December 2014, that his December 2014 absences were related to a disability, or that gastroenteritis caused his absences; indeed, the issues of disability and accommodation for a disability did not come up. (Dkt. No. 19-2, ¶¶ 52–55). The grievance meeting focused instead on a "last chance" agreement proposed by the union, which Defendant rejected. (*Id.* ¶ 56). On January 12, 2015, Defendant

---

[9] Plaintiff's response to paragraph 43 of the SMF is nonresponsive. (*See* Dkt. No. 23-2, at 3).

[10] In his separate statement of facts, Plaintiff inexplicably asserts that he was denied a Step 3 hearing. (Dkt. No. 23, at 8). Yet he admits in response to paragraph 50 of the SMF that the Step 3 hearing took place.

[11] Plaintiff's response to paragraph 51 of the SMF is nonresponsive. (*See* Dkt. No. 23-2, at 3 (stating that Plaintiff brought the doctor's note to an "unemployment hearing that company was challenging")).

denied the grievance and affirmed Plaintiff's termination. (*Id.* ¶ 57). The union did not pursue the

grievance to arbitration. (*Id.* ¶ 58).

### 4.    NYSDHR Charge

Plaintiff filed a disability discrimination complaint (the "charge") with the NYSDHR on

April 2, 2015. (*Id.* ¶ 61; Dkt. No. 23, at 6). The charge, which was dual-filed with the U.S. Equal

Employment Opportunity Commission (the "EEOC"), alleged that Defendant unlawfully

discriminated against Plaintiff in his employment based on disability. (Dkt. No. 23, at 6). The

NYSDHR investigated the matter and found probable cause to support the charge's allegations;

accordingly, it recommended the matter for a public hearing. (Dkt. No. 1, at 2–6).[12] Instead of

proceeding to a public hearing before an administrative law judge, Plaintiff requested an

administrative convenience dismissal in order to pursue his claim in federal court. (*See* Dkt.

No. 23-11). The NYSDHR dismissed the case on March 29, 2016. (*Id.*). Subsequently, on May

2, 2016, the EEOC issued Plaintiff a right-to-sue letter, which noted that Plaintiff "wishe[d] to

pursue [the] matter in Federal District Court." (Dkt. No. 23-3). Plaintiff then timely filed the

instant action on July 27, 2016. (Dkt. No. 1).[13]

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if

all the submissions taken together "show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

---

[12] In reaching its probable cause determination, the NYSDHR described Defendant's "policy and practice" of "charg[ing] employees who are ill with an unexcused absence if the absence is not covered under the FMLA." (Dkt. No. 1, at 5). The agency opined that this practice "may be contrary to the NYS Human Rights Law" because the fact that "an illness is not covered by the FMLA . . . does not excuse [Defendant] from engaging in the interactive process to see if an employee can be reasonably accommodated." (*Id.*). The NYSDHR observed that Defendant "was aware that [Plaintiff] missed several days due to having the flu, yet it did not appear to consider a reasonable accommodation for [Plaintiff's] temporary disability." (*Id.*). Further, its "investigation did not establish that it would have been an undue hardship for [Defendant] to accommodate [Plaintiff's] temporary illness." (*Id.*).

[13] In the instant action, Plaintiff does not claim a violation of the New York Human Rights Law. He only claims a violation of the ADA. (*See* Dkt. No. 1, ¶ 1).

U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' on an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Further, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine

issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.     DISCUSSION

ADA discrimination claims are governed by the same *McDonnell Douglas* burden

shifting framework as Title VII claims. *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16,

21 (2d Cir. 2015). In order to establish a prima facie case for discrimination under the ADA, a

plaintiff must establish: (1) that the defendant is subject to the ADA; (2) the plaintiff was

disabled within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the

essential functions of his job, with or without a reasonable accommodation; and (4) the plaintiff

suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*,

531 F.3d 127, 134 (2d Cir. 2008); *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004).

If an employee establishes a prima facie case, "the employer must offer through the introduction

of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff

must then produce evidence and carry the burden of persuasion that the proffered reason is a

pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The ADA defines a "disability" as: (A) "a physical or mental impairment that

substantially limits one or more major life activities of [an] individual" (the "actual disability"

prong); (B) "a record of such an impairment" (the "record of" prong); or (C) "being regarded as

having such an impairment" (the "regarded as" prong). 42 U.S.C. § 12102(1). "Major life

activities" include "eating, sleeping, walking, standing, lifting, . . . and working," among other

activities. § 12102(2)(A); 29 C.F.R. § 1630.2(i). With regard to the "regarded as" prong, covered

impairments include "an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity," but exclude impairments that are

"transitory" (i.e., "with an actual or expected duration of 6 months or less") and "minor,"

§ 12102(3).

The EEOC has issued regulations setting forth rules of construction to determine whether

an impairment "substantially limits" a "major life activity." 29 C.F.R. § 1630.2(j). The

impairment must substantially limit "the ability of an individual to perform a major life activity

as compared to most people in the general population." § 1630.2(j)(ii). The term "substantially

limits" should be "construed broadly in favor of expansive coverage," and the inquiry into this

threshold issue "should not demand extensive analysis." § 1630.2(j)(i), (iii). Nevertheless, the

regulations recognize that "not every impairment will constitute a disability within the meaning

of this section." § 1630.2(j)(ii). Further, although the "effects of an impairment lasting or

expected to last fewer than six months can be substantially limiting," § 1630.2(j)(ix), the

"duration of an impairment is one factor that is relevant in determining whether the impairment

substantially limits a major life activity" and that "[i]mpairments that last only for a short period

of time are typically not covered, although they may be covered if sufficiently severe," 29 C.F.R.

pt. 1630 app. § 1630.2(j)(1)(ix) (quoting 154 Cong. Rec. H6067–68 (daily ed. June 25, 2008)

(joint statement of Reps. Hoyer & Sensenbrenner)).

Determining whether an impairment substantially limits a major life activity is an

individualized inquiry that depends on the circumstances of the case. *See* 29 C.F.R.

§ 1630.2(j)(iv). Nevertheless, courts in this circuit have held that nonsevere impairments of short

duration generally do not qualify as disabilities under the ADA. *See Colwell v. Suffolk Cty.*

*Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) (noting that the plaintiff's "seven-month

impairment of his ability to work," without specified "residual limitations," was "of too short a

duration and too vague an extent to be 'substantially limiting'"), *superseded by statute on other*

*grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, *as recognized in*

*Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 87 (2d Cir. 2010); *Hernandez v.*

*Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 259 (E.D.N.Y. 2015) (explaining that "[n]on-severe

impairments that last only for a short period of time are not necessarily covered under the

ADA"); *Martinez v. N.Y. State Div. of Human Rights*, No. 13-cv-1252, 2015 WL 437399, at \*7,

2015 U.S. Dist. LEXIS 12536, at \*18 (S.D.N.Y. Feb. 2, 2015) ("Short-term injuries, without

chronic or long-term impact, are usually not considered substantially limiting impairments within

the meaning of the ADA . . . ."); *Mastrio v. Eurest Servs., Inc.*, No. 13-cv-564, 2014 WL 840229,

at \*4, 2014 U.S. Dist. LEXIS 27050, at \*9 (D. Conn. Mar. 4, 2014) (stating that "even under the

broadest definition of disability, short term or temporary impairments generally do still not

render a person disabled within the meaning of the statute"); *see also* Margaret C. Jasper, Legal

Almanac: The Americans with Disabilities Act § 2.5 (2012) ("[A]n individual with a minor, non-

chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not

be covered. . . . This employee is not protected by the ADA because, although he is 'impaired,'

the impairment does not substantially limit a major life activity because it is of limited duration

and will have no long-term effect."). Outside this Circuit, at least one court of appeals has held

that the flu does not qualify as a disability under the ADA. *See Nottingham v. Richardson*, 499 F.

App'x 368, 376–77 (5th Cir. 2012) ("Those conditions [i.e., the flue and thrush] . . . are not

qualifying disabilities but are temporary and do not rise to the level of an impairment of major

life activities.").

In this case, the record indicates that Plaintiff's claimed condition (gastroenteritis) lasted

a few days, that Plaintiff missed work from Monday, December 15, 2014 through Friday,

December 19, 2014,[14] and that Plaintiff was able to return to work the following Monday,

December 22, 2014. Further, while there is some evidence in the record that Plaintiff was

impaired during that time,[15] that evidence is too vague to support a finding that Plaintiff's

impairment was sufficiently severe to qualify as a disability. Even considering all of the evidence

in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude,

based on the very short duration and unspecified severity of the impairment, that Plaintiff's

gastroenteritis substantially limited his major life activities, including his ability to work. As

Plaintiff cannot establish that he was disabled within the meaning of the ADA, his disability

discrimination claim must be dismissed.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 19) is

**GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated:  February 22, 2018
        Syracuse, New York

_Brenda K. Sannes_
Brenda K. Sannes
U.S. District Judge

---

[14] The doctor's note that he received released him to return to work on December 19, 2014. (Dkt. No. 19-2, ¶ 33).

[15] In his deposition, Plaintiff testified that he "was either throwing up or . . . had diarrhea, sometimes both at once." (Dkt. No. 19-1, at 126).